**STATE of Missouri, Respondent,**

v.

**Donald E. PETREE, Appellant.**

**No. KCD 29022.**

Missouri Court of Appeals,
Kansas City District.

June 12, 1978.

Rehearing Denied July 3, 1978.

M. Craig Cassing, Sedalia, for appellant; Brown, Buckley & Cassing, Sedalia, of counsel.

John D. Ashcroft, Atty. Gen., Carson W. Elliff, Asst. Atty. Gen., Jefferson City, for respondent.

Before WELBORN, Special Judge, Presiding, HIGGINS, Special Judge, and PRITCHARD, J.

PRITCHARD, Judge.

By the verdict of a jury, appellant was convicted of the offense of murder in the first degree, and upon a finding that he was a second offender, the court sentenced him to life imprisonment in the Department of Corrections.

Appellant does not question the sufficiency of the evidence. Suffice it to say that the facts show that appellant, on May 17, 1975, fired shots into the back of his estranged wife, Dorothy Petree, in a parking lot, which resulted in her death.

Appellant's points urging reversal and remand for a new trial all relate to contended failures of the state to comply with pre-trial discovery requests in these respects: (1) Permitting Sheriff Emmett Fairfax to testify (in rebuttal) because his identity had not been disclosed on requests for discovery; (2) Failure to disclose prior criminal convictions of state's witness, Mildred Ann Hontz; (3) Admitting in evidence State's Exhibit 17, hospital records, where the state's intention to use them had not been disclosed; and (4) Failure of the state to

disclose a prior medical examination of appellant where it tended to corroborate his theory that he was suffering from a mental disease or defect at the time of the offense. Although the transcript on appeal does not contain objections to these items of evidence, a stipulation of June 28, 1977, filed herein recites that objections thereto were made at trial and were overruled by the court.

Appellant filed notice of his intent to rely upon the defense of not guilty by reason of mental disease or defect on July 14, 1975. A psychiatric examination was granted at state's expense at the State Hospital at Fulton, Missouri. From that examination, Dr. Henry R. Bratkowski testified in rebuttal that a schizoid personality was not a mental disease under Missouri law. On January 6, 1976, appellant's motion for private re-examination by a psychiatrist at the Missouri Baptist Hospital in St. Louis County, Missouri, was granted. From that re-examination, Dr. Robert B. Deitchman, M.D., testified that appellant was suffering from a mental disease or defect at the time of the charged offense, as revealed by his report, that "This man has a schizoid personality." Elaborating, Dr. Deitchman testified, that at the time of the incident, May 17, 1975, "A I stated that I feel that with some clarification as in the presence of the gun, clarification of the exact degree of difficulty of Mr. Petree, schizoid personality seems to be substantiated by his history. One can consider the possibility this man was under sufficient stress and broke and was unable to control his actions." And, "Q * * * If I understand it, your conclusion is that this man is of a schizoid personality type? A This man has a schizoid personality."

Appellant called lay witnesses who, based upon their observations, testified to the effect that he was suffering from mental disease or defect at the time of the alleged offense. To meet the testimony of the lay witnesses, the state called in rebuttal Sheriff Emmett Fairfax, who, based upon his observations of appellant while he was in jail for several months, gave his opinion that appellant was not mentally ill. The admission of this rebuttal testimony, the witness not being specifically disclosed by the state, is the basis for appellant's first point. The case of *State v. Curtis*, 544 S.W.2d 580 (Mo. banc 1976), cited and relied upon by appellant, did indeed hold that under the new rules of criminal discovery, it was reversible error to permit a psychiatrist to testify in rebuttal that appellant there did not suffer from a mental disease or defect, because, " 'Reciprocal discovery' mandates that the State be required to disclose the names and addresses of persons it intends to call as rebuttal witnesses in both situations [alibi and notice-of-mental disease or defect defense situations]. 'It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.' [Quoting *Wardius v. Oregon*, 412 U.S. 470, 476, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973)]". [Brackets added.] The obviously sound purpose of discovery rules is to prevent *surprise*, as noted in the *Curtis* opinion. There, so far as the opinion reveals, the existence of the psychiatrist as a possible witness was unknown to defendant until the night before trial, and "there was no opportunity afforded the defense to arrange to interview Dr. Tuttle, much less depose him." In this case, appellant himself disclosed to the state that he intended to call Sheriff Fairfax as a witness in his own behalf, but he did not do so. He had full opportunity to interview him for some length of time prior to trial to ascertain if any testimony he might give would bear upon the early asserted defense of mental disease or defect. Furthermore, prior to Sheriff Fairfax's rebuttal testimony, appellant did not request a recess or adjournment in order to further interview the witness. "Neither did he request an adjournment or recess of the trial in order to be afforded an opportunity to interview the rebuttal witnesses. Where the discretion of the trial court has not been invoked, it cannot be said that there was an abuse of that discretion. *State v. Perry-*

man, 520 S.W.2d 126, 128[3] (Mo.App.1975)." State v. Hooker, 536 S.W.2d 487, 491[7] (Mo.App.1976). The circumstances of this case show that there was no withholding by the state of the identity of a witness it would call in rebuttal (the state not being required to endorse rebuttal witnesses on the indictment or information, Curtis, supra) as to amount to a surprise to appellant. The first point is overruled.

■ As to the second point that the state failed to disclose prior criminal convictions of witness Hontz, the record shows that in response to request, the state disclosed: "7. The State has requested computer checks on the witnesses, and none of the witnesses with the exception of Richard B. Jones has an identifiable NCIC or MULES criminal record. Mr. Jones has two convictions for speeding. The printouts are included in the file and available for review." On pre-trial deposition, witness Hontz testified that she had never been convicted. On motion for new trial, appellant attached certified copies of magistrate court records showing that witness Hontz had pleaded guilty to charges of "exceeding day speed limit" and "speeding" in 1975. The magistrate records show that the prosecuting attorney who conducted this case also represented the state on one of the traffic offenses. Other than that fact, there is nothing indicating that the state failed to use diligence and make good faith efforts to cause this prior misdemeanor material available to defense counsel as required by Rule 25.32(A)(7) and (C). The question is whether the failure to disclose these records would have affected the outcome of the case. Witness Hontz was an eyewitness to the homicide, and testified as to appellant's guilt in committing it. She did not testify as to the defense of mental disease or defect. Witness Jerry Meyer testified that he saw appellant pull out the gun and shoot deceased approximately seven times, after which she slowly dropped to the ground. In State v. Dayton, 535 S.W.2d 469, 477 (Mo.App.1976), there was a failure to disclose a written report of a physician who examined a young witness at trial in which report were statements contradicting the testimony given at tri-

al—a situation somewhat analogous to the one here, where witness Hontz had given deposition testimony contrary to what the magistrate court records showed as to her. In the Dayton case, the court said, page 478[15, 16], "The proof by G. D. of the other counts was merely corroborative of the other sufficient and clear testimony of guilt and, in reasonable likelihood, the failure to disclose the contradictory statement made by G. D. to the physician would not have affected the judgment of the jury. (Citing cases.) * * * We conclude, accordingly, that the evidence was not of a character to raise a reasonable likelihood that, if known at trial, would have affected the result." As in the Dayton case, witness Hontz's testimony was merely corroborative of the other clear testimony, that of witness Meyer, as to appellant's guilt which was before the jury. Accordingly, appellant's second point is overruled.

■ Under the third point, appellant contends error in the state's failure to disclose its intention to use hospital records, State's Exhibit 17. Appellant admits in his brief that his counsel did in fact examine "some" hospital records. This was pursuant to a written motion for disclosure by appellant for "any reports or statements of experts made in connection with the particular case, including results of physical and mental examinations and of scientific tests, experiments, or comparisons." This motion was granted by the court, with a further order that a copy of the order of disclosure be served upon the Director of Administration, Fulton State Hospital, Fulton, Missouri. The hospital records came into evidence during rebuttal testimony of Dr. Bratkowski, after this in-chambers colloquy: "MR. FLEMING: I have Dr. Bratkowski here today. He is not the doctor who saw Mr. Petree on the second visit to Fulton. That is Dr. Legitt. That is the one I told Mr. Cassing about yesterday morning. I found that out Friday evening and have not been able to get in touch with him. THE COURT: But he has the entire hospital records with him? MR. FLEMING: I presume Dr. Bratkowski does. THE COURT:

I will provide an opportunity for those records to be reviewed by this Dr. Deichman and cover it at that time, if the counsel for the defendant so desires. MR. CASSING: To examine those records? THE COURT: Yes. MR. CASSING: I would see no purpose of examining the records, your Honor. It is the position of the defendant that at a subsequent treatment at the State Hospital—it is highly prejudicial to the defendant, irrelevant, immaterial." It is apparently appellant's contention that the fact that the hospital records were admitted during rebuttal, that he was prejudicially denied their use to substantiate his own expert's (Dr. Deitchman's) opinion. Since appellant knew of the records, as above set forth, and had inspected them, there was nothing to prevent him from obtaining them and using them during his case. No prejudice, and indeed, no error, is demonstrated by the claimed failure of the state to disclose its intention to introduce the records in rebuttal. There was no surprise, nor limitation of any right of cross-examination of witness Bratkowski. Compare *State v. Burton,* 544 S.W.2d 60, 65[5] (Mo. App.1977). The third point is overruled.

■ The last point for contended error is the failure of the state to disclose a prior medical examination of appellant because it tended to corroborate his defense of mental disease or defect. That medical examination was done at the request of Sheriff Fairfax made in a response to a petition filed in the probate court by the victim of the homicide here on December 4, 1974. The post-trial affidavit of Dr. Donald K. Kirby offered by appellant on his motion for new trial stated he was unable to find any physical disorders which would explain or rationalize appellant's behavior or mental condition, but he did recommend, based upon the description of appellant's behavior given to him by Sheriff's deputies and appellant's wife, that he should alternately, be submitted to Fulton State Hospital for testing and treatment on a voluntary basis. At the hearing on the motion for new trial, Dr. Kirby gave his opinion: "A I felt like he was not mentally ill." He talked to him about 15 or 20 minutes; it was difficult to

form any type of opinion with one contact; his talk was very rational; he was very nervous; he was anxious to get out of jail. The doctor testified further that he had never communicated with Sheriff Fairfax or the prosecuting attorney, from whom it was developed that he first learned of the medical examination after the trial, although he learned of the probate petition either from Mr. Cassing or through discovery. There is nothing here to base an imputation of knowledge of the sheriff to the prosecuting attorney of any fact favorable to appellant as was the case in *State v. Hurd,* 520 S.W.2d 158 (Mo.App.1975). In fact, there is nothing here to indicate that any evidence favorable to the accused was intentionally or even negligently suppressed so as to come within the proscription of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). For this reason, the fourth and last point must be overruled.

The judgment is affirmed.

All concur.