STATE of Missouri,
Plaintiff-Respondent,

v.

Edwin Wayne WAGNER,
Defendant-Appellant.

No. 38935.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 10, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 17, 1979.

John D. Ashcroft, Atty. Gen., Chief Counsel—Criminal Div., Paul Robert Otto, Steven Scott Clark, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Pros. Atty., Steven H. Goldman, Asst. Pros. Atty., St. Louis, for plaintiff-respondent.

CRIST, Judge.

Assault with intent to do great bodily harm with malice aforethought and attempted arson convictions. Concurrent, penitentiary sentences assessed at 50 and 5 years, respectively.

Defendant does not challenge the evidence. On July 17, 1976, defendant and his ex-wife, the victim, spent most of the day at their favorite tavern, Zanker's Bar. They were together in the victim's home that evening. A disagreement began regarding the return of $106.00 to defendant. The victim was severely beaten and left unconscious and seriously injured. Defendant then poured gasoline around the room and set it afire. The victim sustained second degree burns.

Upon appeal, defendant claims he was entitled, by authority of § 552.020, RSMo. Supp.1975, to a psychiatric examination by a physician of his choosing although requested after the imposition of the sentences. We disagree.

Pursuant to § 552.020, *supra*, defendant requested and received a pretrial psychiatric examination at St. Louis State Hospital. However, the report of the examination was not filed with the court prior to trial by reason of the examining physician's illness. At trial, defendant's attorney informed the court he had been advised by the doctor that the examination was concluded and that defendant was able to stand trial. The doctor had reported his examination revealed no mental disease or defect that would keep defendant from standing trial.

Prior to defendant's examination pursuant to § 552.020, *supra*, defendant's own clinical psychologist performed thorough tests of defendant's mental capacities. This report also indicated defendant suffered no

William J. Shaw, Public Defender, Daniel L. McCleave, Robert A. Cosentino, Asst. Public Defenders, Clayton, for defendant-appellant.

disease or mental defect which would prevent him from standing trial but did indicate defendant's memory was deficient.

Although the formal report of defendant's § 552.020 examination had not been filed, defendant did not object or ask for continuance but proceeded to trial. Further, defendant did not enter a plea of not guilty by reason of mental defect.

After return of the jury verdict, defendant filed his motion for new trial suggesting for the first time the court had erred in proceeding to trial without having the report of the St. Louis Hospital on file. Before ruling on the motion, the trial court heard evidence by the examining St. Louis Hospital psychiatrist regarding the mental capacity of the defendant to stand trial. All attorneys of record were present and participated. The state psychiatrist testified his opinion was defendant was competent to stand trial. Defense examination of the witness developed the defendant's claims of memory deficiency. After the testimony of the doctor, and without objection by the defendant, the court overruled the motion for new trial, rendered allocution, and sentenced defendant.

Immediately after sentencing, defendant objected to the imposition of the sentences and requested the right to have a mental examination by a psychiatrist of his own choosing. The court properly denied the request as being untimely.

■ The issue of competency to proceed is a preliminary one, and exclusively for the court. *State v. Clark*, 546 S.W.2d 455, 468[14] (Mo.App.1977). Here the record substantiates the conclusion that defendant was competent to stand trial. We cannot find the failure to file the formal report of the psychiatric examination prejudicial to this defendant when the court and all lawyers of record were apprised of the results of the requested examination, *Anderson v. State*, 493 S.W.2d 681, 684 (Mo. App.1973); *see, State v. Stein*, 504 S.W.2d 1 (Mo.1974), and when it would have, at most, bolstered the defense's psychiatric report in the conclusion defendant was competent to stand trial despite some memory deficiencies.

■ In any event, the request for a second mental examination was not timely because made after the imposition of the sentences. *Brown v. State*, 485 S.W.2d 424, 428[3] (Mo.1972) (although incompetency to proceed may be raised under § 552.020, supra, at any time before sentence is imposed, the statute makes no provision for post-sentence psychiatric examination to establish the prior fitness to proceed). *Mikel v. State*, 550 S.W.2d 863, 869–70 (Mo.App. 1977). *But see, Miller v. State*, 498 S.W.2d 79, 87–88[17] (Mo.App.1973); *cf., Bryant v. State*, 563 S.W.2d 37 (Mo. banc 1978) (consideration of competency claims in 27.26 proceeding concerning guilty plea). In view of the facts and defendant's delay, the trial court in *State v. Stein, supra,* found no duty to prolong the proceedings to afford defendant the opportunity to be examined by his own physician. *Cf., State v. Mayfield*, 562 S.W.2d 404, 407–410 (Mo.App. 1978) (trial court had no duty to grant continuance at sentencing proceedings in order to hold competency hearing).

Defendant next complains that the court erred in failing to instruct the jury that it could consider voluntary intoxication in its determination of specific intent, deliberation, and malice aforethought. This point is without merit.

■ Voluntary intoxication is not a defense to a criminal charge. Further, voluntary intoxication cannot be considered on the issue of specific intent. *State v. Richardson*, 495 S.W.2d 435, 440[6] (Mo. banc 1973); *State v. Hegwood*, 558 S.W.2d 378, 381[4] (Mo.App.1977). The intent to do great bodily harm and malice aforethought are the elements of specific intent necessary to convict defendant. *See, State v. Bolden*, 494 S.W.2d 61, 65[4] (Mo.1973). The testimony indicated that the defendant had been drinking heavily on July 17, 1976. At the time the crime was committed he was intoxicated. The court properly instructed the jury that voluntary intoxication is not a defense under such facts. *State v. Street*, 498 S.W.2d 523, 524[1] (Mo.1973).

Defendant next complains of the admission into evidence of the clothes he wore at the time of the crime claiming the chain of custody was broken.

At the time of his arrest, defendant's pants, belt, shirt, and shoes were sealed in an evidence envelope and placed in the secured evidence locker by Detective Bray. Defendant's clothes were thereafter transferred to Michael Walsh at the police laboratory by Detective Carver. A chemist at the police laboratory testified he received the evidence in a sealed envelope from Walsh, performed certain tests, thereafter placed the evidence in a vault, and later transferred the evidence to another chemist at the police laboratory for additional tests. The second chemist to test defendant's clothing testified that the evidence was returned to the police after he performed certain tests but that, upon the request of the prosecutor, he re-examined and again tested the evidence which was brought to him by Patrolman Gardiner.

■ Defendant says the chain of custody was broken because Chemist Walsh and Patrolman Gardiner handled the clothes but did not testify. We disagree. There is no requirement that everyone who touches an exhibit must testify, or that the state exclude every possibility of tampering, in order for the evidence to be admissible. *State v. Burnett*, 538 S.W.2d 950, 952–53[2–4] (Mo.App.1976); *State v. Winters*, 525 S.W.2d 417, 426[20–21] (Mo.App.1975). Contrary to defendant's suggestion of the opportunity for interference with the evidence, the evidence possessed sufficient assurance that no one had tampered with the exhibit and that the exhibit was the same and in the same condition at trial as when obtained. *State v. Burnett, supra.* Detective Bray, who seized the exhibit, testified the clothes were in the same condition as when seized except that small samples of material had been removed for testing. This showed "sameness of condition." *State v. Stevens*, 502 S.W.2d 335, 337–38[5] (Mo.1973).

We find no abuse of the trial court's broad discretion in admitting the evidence of defendant's clothing upon the chain of custody established *State v. Turner*, 543 S.W.2d 270, 272–73[3–5] (Mo.App.1976).

■ Defendant next contends evidence consisting of test results showing the presence of hair and blood on his shoes should have been excluded because not timely disclosed and because defendant was surprised. Defendant timely requested disclosure under Rule 25.32(A)(5). Thereafter, about one week before trial, the state conducted the test in question. The prosecutor orally advised the defendant of the test results on Saturday before the trial began on Monday. He presented the written report to the defendant on Monday. Defendant elected to begin and proceed with the trial without asking for any specific relief due to the surprise of the test results. His strategy seemed to be to proceed to trial, object to the evidence when offered, and, if overruled, claim error. He slept too long on his rights. Such strategy does not call for a reversal. *State v. Carter*, 572 S.W.2d 430, 436[10–11] (Mo. banc 1978); *State v. Davis*, 556 S.W.2d 45, 47–48[3–5] (Mo. banc 1977); *State v. Flenoid*, 572 S.W.2d 179, 181[3] (Mo.App.1978). Assuming, arguendo, the evidence was not timely disclosed, we find no abuse of discretion resulting in prejudice or fundamental unfairness to defendant in the trial court's refusal to order the more drastic sanction of exclusion of the evidence.

■ Lastly, defendant protests that testimony that defendant had skinned knuckles on the night of his arrest should have been excluded because not disclosed under Rule 25.32. Defendant claims surprise.

Defendant, of course, knew about his skinned knuckles from the time they were skinned. His lawyer knew about this condition more than two months prior to trial as evinced by his examination of witnesses upon the hearing on the motion to suppress. There was no surprise.

■ The purpose of the criminal discovery rules is to prevent surprise and afford the parties a decent opportunity to prepare in advance of trial, *State v. John-*

*son,* 524 S.W.2d 97, 101[5] (Mo. banc 1975); *State v. Petree,* 568 S.W.2d 546 (Mo.App. 1978), and is not to compel the state's recitation of facts more peculiarly within the knowledge of defendant. *See, State v. Joyner,* 571 S.W.2d 776, 778[2–3] (Mo.App.1978) (the state can be condemned for non-disclosure of physical evidence only if the facts indicate the state had possession of items unknown to the defense and did not disclose the items not if the defense has knowledge of the items).

The trial court did not abuse its discretion in admitting the evidence of defendant's injured hands. No fundamental unfairness or prejudice was caused by the state's failure to include such information as part of discovery disclosure. *State v. Davis, supra.*

The judgment is affirmed.

REINHARD, P. J., and GUNN, J., concur.