STATE of Missouri,
Plaintiff-Respondent,

v.

Nevail MITCHELL, Defendant-Appellant.

No. 40036.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 29, 1981.

Michael M. Frank, Brian A. McKinsey, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, John M. Morris, Asst. Attys. Gen., Jefferson City, Kent W. Fanning, Asst. Pros. Atty., St. Charles, for plaintiff-respondent.

DOWD, Judge.

Nevail Mitchell, herein appellant, was convicted by a jury of first degree murder and sentenced to life imprisonment. He appeals. The evidence adduced at trial is as follows.

The decedent Juanita Gregory had been separated from her husband for ten years, during which time she had several male friends. The decedent and the appellant had lived together for a number of years but were not doing so at the time of the murder. Appellant's relationship with decedent was marked with arguments and fights where appellant beat or struck her. On February 27, 1977, during an argument at decedent's house, appellant was heard by a neighbor to say "If I can't have her, no one else can." On March 3, 1977, a fellow employee saw the decedent and the appellant arguing in the lobby of her place of employment at about 6:30 a. m. Appellant was angry and was shouting at decedent. That evening the decedent went shopping with her two sons and a male friend, Richard Kimbrough. While the decedent was in the shopping center, appellant drove up and asked her two children where their mother was and whether she was with Richard Kimbrough. When told she was with Kimbrough the appellant looked "mad" and drove away. That following morning, March 4, 1977, Kimbrough telephoned the decedent and heard appellant's voice in the background saying "You ain't got no problems, bitch", after which the phone went dead. Appellant and the decedent were then seen leaving her house at 8:45 or 9:00 a. m. and walking towards appellant's blue Cutlass Supreme. At approximately 2:00 p. m., two high school students, Duane Smith and Sue Ann Morris were seated in Smith's pickup truck near to and within sight of a barn by Weldon Springs Road in St. Charles County, when they saw a blue Cutlass Supreme exit the driveway to the barn some thirty yards behind them and turn in their direction. Both Smith and Morris testified the car was moving unusually fast and weaving all over the road and that Smith saw the occupant's face and Morris saw the back of his head. Both subsequently identified the car as being that of the appellant. Smith also noted that the appellant looked surprised as he passed them. The body of the decedent was found the next day on March 5. The body was nude from the waist to the knees and bore shotgun wounds to the head, right forearm and abdomen. It was determined she had been killed at approximately 2:00 p. m. on March 4, and that shotgun wounds to the head were the cause of death. Items of evidence seized were shotgun pellets found in the decedent's brain and abdomen, and shot cup embedded in the brain, shotgun wadding found near the body and a plaster cast was taken of a tire track near the body. The prints of the tires on appellant's car were found to match the plaster cast of the tire tracks found at the murder scene.

On March 5, the day the decedent's body was discovered, appellant, who was in Louisiana, called a friend in St. Louis and after being told of the decedent's death stated he had no idea how she was killed and that he "hadn't seen her since God knows when." He also stated that he had been at the St. Louis license bureau at 9:00 a. m. and at a shopping center from 1:00 to 1:30 p. m. on the day of the murder. Appellant later testified he had been at the license bureau at the time of the murder. Appellant was arrested upon his return to St. Louis. On the basis of a written consent to search executed by appellant, his car was seized and his house was searched. Found during this search were ten unexpended twenty-gauge shotgun shells Federal brand size 8

shot and Western brand size 6 shot, and a twenty gauge shotgun.

Appellant was advised of his *Miranda* rights. He denied committing the crime and stated that the last time he had seen the decedent was Wednesday, March 2, and that he didn't know where St. Charles was.

Prior to appellant's arrest, Duane Smith identified appellant from nine photographs of black males, as the man he had seen driving the car. Following appellant's arrest, both Smith and Morris positively identified him in a lineup. The shotgun pellets recovered from the decedent's brain were size 7½ or 8 and the shot cup indicated a Federal brand twenty-gauge shell. The pellets in decedent's abdomen were size six, and Western brand twenty gauge shotgun wadding was found near the body. Evidence adduced at trial also showed that the projectiles which caused the victim's death matched the shotgun shells seized from the appellant.

After the proceedings there was a delay caused by the court reporter's failure to prepare a transcript. A contempt order by this court against the court reporter followed. *State v. McAnany*, No. 41960, September 19, 1979. After the preparation of the transcript a hearing was held on the adequacy of the appeal record. At this time the State stipulated as to objections of the defense during the trial and to legal arguments and objections presented by the defense during the motion for new trial that were not included in the transcript. The State did not stipulate to actual testimony of witnesses.

■ Appellant raises several points of error, the first being that the court erred in overruling his motion for acquittal at the close of all the evidence because the State failed to adduce sufficient evidence to convict him. There is no direct evidence of the appellant's guilt presented by the State. It is well established, however, that a conviction based solely on circumstantial evidence is as legitimate as one founded on direct evidence. *State v. Shelton,* 589 S.W.2d 658 (Mo.App.1979). The circumstantial evidence need not be conclusive of guilt or demonstrate the impossibility of innocence but must be consistent with the theory of guilt and inconsistent with reasonable theories of innocence. *State v. Lumsden,* 589 S.W.2d 226, 227 (Mo.banc 1979); *State v. Turnbough,* 497 S.W.2d 856, 858 (Mo.App. 1973).

The State's evidence showed that the appellant had had arguments and physical altercations with the decedent in the past, and that appellant had expressed jealousy and anger toward the victim in the past and on the night before the murder. Appellant was heard shouting at the decedent while she was on the phone and shortly thereafter the line went dead. In addition, appellant was the last person seen with the victim. He was also identified by two witnesses as the man they saw leaving the property where the decedent's body was found at approximately the time the victim was killed. A shotgun and ammunition found in appellant's possession matched the gauge, brand of shells and type of shot used to kill the victim, and the tires on appellant's car matched tire prints found at the murder scene. The appellant stated he had not seen the decedent since two days prior to the murder yet there was evidence placing him with her during that time. Finally, in a telephone conversation with a friend the day the body was found, the appellant made statements inconsistent with his alibi.

It is not within the province of this court to weigh the evidence as presented at the trial [as appellant urges by offering his alibi evidence] but only to review the evidence for the purposes of determining whether it was sufficient when viewed in a light most favorable to the verdict, to support the conviction. *State v. Lowery,* 565 S.W.2d 680, 684 (Mo.App.1978); *State v. Shaw,* 602 S.W.2d 17, 19 (Mo.App.1980).

In deciding whether the evidence was sufficient to sustain a conviction, we will consider the evidence and all favorable inferences to be drawn therefrom in the light most favorable to the State and disregard all inferences to the contrary. *State v. Shaw, supra,* at 19. *State v. Sheldon, supra,* at 659.

■ A careful review of the evidence leads us to the logical conclusion that said evidence is consistent with the theory of guilt and inconsistent with reasonable theories of appellant's innocence. Appellant's point is without merit.

Appellant's second point of error is that the trial court erred in overruling his motions to suppress identification testimony and in overruling his objections at trial to such in-court identification. Appellant argues the identification by Duane Smith and Sue Ann Morris was unduly suggestive and improperly obtained through the use of photographic displays and lineups and that said identification was not independent but tainted and improper.

■ This point is not reviewable on appeal as appellant has not provided this court with a transcript of the suppression hearings pursuant to Rule 81.12(a). It is well established that "the ultimate responsibility for the preparation and filing of a transcript on appeal ... is on appellant. Having the burden of demonstrating error it is his obligation to prepare and file a transcript which incorporates the proceedings showing that the trial court erred. If the transcript prepared is defective or omits material matters it is appellant's duty to take steps to supply the omission or cure the defect." *Jackson v. State,* 514 S.W.2d 532, 533 (Mo.1974); *State v. Harris,* 564 S.W.2d 561, 565–66 (Mo.App.1978). Reversal and retrial will not be required unless the appellant exercises due diligence to supply the omission. *State v. Borden,* 605 S.W.2d 88, 92 (Mo.banc 1980). After a careful review of the record we find no evidence that appellant made any effort to obtain a transcription of the suppression hearings. In fact the record shows the appellant did not order the transcript of the suppression hearings but that he requested only a transcript of the trial and a transcript of the voir dire and motion to strike jury venire of the defendant-appellant.[1] We also note that at the hearing on October 7, 1980, where the parties discussed and resolved various defects in the transcript, nothing in the record suggests an attempt by appellant to obtain by stipulation or motion any portion of the suppression hearings.

■ Even upon a review of the trial evidence it is clear that the trial court did not err in overruling appellant's motion to suppress. In order to determine whether such a motion was properly denied this court must review the adequacy of the evidence to support the trial court's findings. *State v. Olinghouse,* 605 S.W.2d 58, 66 (Mo. banc 1980). The evidence is as follows: Three days after seeing the car and the subject in question, both witnesses, Duane Smith and Sue Ann Morris were shown nine photographs of black males. Prior to the viewing, which was conducted in the presence of a high school guidance counselor and two police officers, Smith heard an officer state that the one they thought did it was in Louisiana. The officer, however, did not indicate which man it was or suggest to Smith whom he should identify. Smith then viewed the nine photographs and identified the appellant, as the man he saw driving the blue Cutlass. Morris was unable to make an identification because she had only seen the back of the subject's head. Two days later both witnesses separately viewed a six-man lineup at the St. Charles County Sheriff's Office. Smith positively identified the appellant again. Morris, after asking the lineup participants to face in the opposite direction so she could see the back of their heads, identified the appellant as the man driving the blue Cutlass. Again, there is no indication that the police suggested whom the witnesses should identify. We further conclude there were no suggestive and improper procedures employed by the police, negating appellant's argument that there was a lack of independent basis for said identifications. Appellant's point is denied.

1. In a contempt order issued by this court against court reporter Carol McAnany, *State v. McAnany,* No. 41960 (Mo.App.E.D., September 19, 1979) we ordered her to deliver to this court all of her stenographic notes, court files, exhibits and other uncompleted transcripts. There is no evidence appellant attempted to acquire the transcription of the suppression hearings from these notes.

Appellant's third assignment of error is that the trial court improperly permitted rebuttal witness Chief of Detectives Victor Bowman to testify as to statements made after appellant had requested counsel, and concerning which a pre-trial motion to suppress had been granted.

Appellant points out that following an evidentiary hearing the trial court granted his motion to suppress as to all statements made after 4:05 p. m., March 8, 1977, which was when appellant, invoking his *Miranda* rights, requested counsel. In keeping with this order the State in its case in chief restricted its evidence to statements made before this time. During appellant's testimony, however, he stated he had been at a city license bureau from 12:55 to 1:35 p. m. on the day of the murder, that he returned home and saw Bloomie Thomas and that he returned to the license bureau from around 2:00 to 3:30 p. m. The prosecution sought to cross-examine appellant concerning a statement made after 4:05 p. m. on March 8, that he had been at home from 1:00 to 3:00 p. m. on the day of the murder. After appellant's objection was overruled, he testified he had not told police that he had been home between 1:00 and 3:00 p. m. On rebuttal, State's witness Officer Bowman testified over appellant's objection that appellant told him to contact Bloomie Thomas because she had seen that he was home between 1:00 and 3:00 p. m. We believe the court property admitted this evidence for purposes of impeachment on rebuttal.

■ In *Oregon v. Hass* 420 U.S. 714, 722, 95 S.Ct. 1215, 1221, 43 L.Ed.2d 570 (1975) the court found that "the shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances." Also see *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). This doctrine has been previously applied by the courts of this state, holding that there are two criteria which must be followed when using statements by way of impeachment and rebuttal. The first is a showing that such statements are voluntary and the second that use of such statements must rest upon the laying of a proper foundation. *State v. Sager*, 600 S.W.2d 541, 556–557 (Mo.App.1980); *State v. Mitchell*, 611 S.W.2d 211, 213 (Mo.banc 1981). We conclude both requirements were satisfied. The only defect in appellant's statement was the *Miranda* violation. In addition, his objection at trial was based solely upon the *Miranda* violation and not the voluntariness of the statement. Finally, a proper foundation was laid in that appellant was questioned as to the statement and whether or not he denied making it.

Appellant's third point is without merit.

■ As his fourth point of error appellant asserts that the trial court improperly admitted the testimony of State's rebuttal witness Phyllis Nelson regarding statements made to her by defense witness Ronald Schmitz, who was defense counsel's investigator. Appellant contends this attempt to impeach Schmitz concerned a collateral matter, assumed facts not in evidence and was beyond the scope of direct examination. Relying on the rule advanced in *State v. Simmons*, 559 S.W.2d 557, 560 (Mo.App.1977) appellant argues that the scope of impeachment in Missouri allows a party to impeach the testimony of an opponent's witness, provided such impeachment does not concern collateral matters which are of no material significance in the case or are not pertinent to the issues as developed.

The State presented Phyllis Nelson, a rebuttal witness, who was employed at Grandpa Pidgeon's on March 4, 1977, the day of the murder, and when Ronald Schmitz went to Grandpa Pidgeon's to investigate appellant's alibi. Appellant stated he had gone to Grandpa Pidgeon's on March 4. On cross-examination of Schmitz, the State asked whether or not he had asked Ms. Nelson to identify the appellant as being there on the day of the murder. Mr. Schmitz stated he had never made any such statement or asked such a question. The State then presented Ms. Nelson's testimony that Schmitz had allegedly shown her a picture of appellant and asked if she had seen him on the date in question.

The evidence clearly reveals that the testimony in question was of material significance in the case and was pertinent to the issues as developed. Furthermore, during the trial, appellant put the issue of his alibi in question and any testimony relating to said alibi is indeed relevant.

■ Assuming that such testimony had no bearing on the issues of the case it is always relevant to show the interest or bias of a witness. In addition, the inquiry into such bias or interest is left largely to the discretion of the trial court. *State v. Glass*, 554 S.W.2d 426, 429 (Mo.App.1977). As such, both the cross-examination and rebuttal testimony was relevant and proper. The cross-examination regarding the witness's statements to Ms. Nelson reflected his interest and bias in that the admission of said statements demonstrated his desire to ensure an alibi witness was found. Since Schmitz denied making the alleged statements we believe it was entirely proper to contradict his claim by rebuttal evidence. Therefore, in light of the evidence presented we conclude the trial court did not abuse its discretion in admitting Ms. Nelson's testimony.

Point denied.

In appellant's fifth point of error he contends the court erred in overruling his objection to the testimony of State's rebuttal witness Phyllis Nelson in that the State did not disclose she would be a witness and did not disclose a written statement given by the witness. Rule 25.32 (now 25.03) states in pertinent part: "... the state shall, upon written request of defendant's counsel, disclose the names and last known addresses of persons whom the state intends to call as witnesses ... together with their written or recorded statements...."

Pursuant to this rule appellant presented the prosecuting attorney in this case with a request for disclosure. At trial appellant objected to the admission of Ms. Nelson's testimony due to the State's failure to endorse her as a rebuttal witness and that none of her statements had been disclosed.

■ It is well established that rebuttal witnesses need not be endorsed and that whether a witness may be a proper rebuttal witness is determined by the trial court without regard to the witness endorsement requirement. *State v. Curtis*, 544 S.W.2d 580, 581 (Mo.banc 1976); *State v. Cameron*, 604 S.W.2d 653, 657 (Mo.App.1960). As such we believe the court properly permitted the witness to testify.

■ Relying on *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973); and *State v. Curtis*, 544 S.W.2d 580 (Mo.banc 1976) appellant further argues that due process requires that state rebuttal witnesses not be permitted to testify in situations where a defendant has disclosed he intends to rely on the defense of alibi and the state has failed to disclose the names of the persons to be called to rebut the defense of alibi. A careful review of the record reveals, however, that the testimony was offered not to rebut appellant's alibi but to impeach the defense witness Mr. Schmitz. As such appellant's reliance on *Williams, supra, Wardius, supra*, and *Curtis, supra*, is misplaced.

Furthermore, "The purpose of the criminal discovery rules is to prevent surprise and afford the parties a decent opportunity to prepare in advance of trial ... and is not to compel the state's recitation of facts more peculiarly within the knowledge of the defendant." *State v. Wagner*, 587 S.W.2d 299, 302–303 (Mo.App.1979). Ms. Nelson's testimony related solely to an interview conducted by the public defender's investigator, Ronald Schmitz, who admitted to this interview in his testimony at trial. It is clear that before the trial appellant was aware of the subject of Ms. Nelson's testimony. Therefore, appellant cannot now claim surprise or prejudice by the nondisclosure of said testimony. The point is without merit.

Appellant's sixth point of error also concerns the State's failure to comply with Rule 25.32 (now 25.03). He asserts the court erred in overruling his objection and motion to strike the testimony of St. Charles Detective Victor Bowman and in

failing to grant his motion for mistrial. The testimony complained of arose as follows: After obtaining appellant's consent Officer Bowman conducted a search of appellant's home. As a result of this search Officer Bowman prepared a police report stating that they had seized "ten twenty gauge shotgun shells WW brand (Western)." Appellant was provided with a copy of this 74 page police report prior to trial. Before he testified, Officer Bowman corrected this portion of the report to state that the shells had been Western and Federal brands. Appellant never received notice of any change in said report.

■ We must first note that appellant's claim that his motion to strike was overruled and that the court refused to grant a mistrial is inaccurate. The record reveals that when Officer Bowman stated he had corrected his report, appellant objected on discovery grounds and the testimony was ordered stricken by the trial court. In addition, appellant made no further complaint when the trial judge asked defense counsel if this was the relief requested. As such appellant received all of the relief he requested and cannot now, claim reversible error. *State v. Wendell*, 547 S.W.2d 807, 817–818 (Mo.App.1976).

Furthermore, it is well established that the imposition of a particular sanction provided for in Rule 25.45 (now Rule 25.16) lies within the discretion of the trial court, and this court will not reverse unless the failure to impose such sanction, when the State fails to comply with a discovery request, results in prejudice and fundamental unfairness to the accused. *State v. Washington*, 570 S.W.2d 838, 842 (Mo.App.1978). As Officer Bowman's statement concerning the corrections on the police report was stricken, appellant could impeach him by the fact that his original report did not list any Federal brand shells thereby negating any prejudice or fundamental unfairness which could have resulted from the State's failure to notify appellant of the corrected report. As a result we believe it is clear there was no abuse of the trial court's discretion in this case. Appellant's point is without merit.

Appellant in his seventh point of error argues that the trial court erred in overruling his objection to the testimony of Alfred L. Evans in that his prior statement had not been disclosed to appellant. Appellant also contends said statement prejudiced him by contradicting his alibi and that the court erred by not declaring a mistrial.

■ The record reveals appellant was supplied with a written statement made by Mr. Evans, and that this was the only written statement made by the witness. Thus it is clear that the State produced all written statements issued by the witness pursuant to Rule 25.32 [now 25.03]. There is no evidence that Mr. Evans gave any written statement other than the one disclosed to appellant prior to trial. In addition, as the State complied with Rule 25.32 and produced the statement in question, we find no basis for a mistrial and accordingly the trial court did not abuse its discretion in failing to grant one. *State v. Garrett*, 622 S.W.2d 387 (Mo.App.E.D.1981).

Appellant's point is denied.

Appellant's eighth and ninth claims concern allegedly improper statements and expressions made by the court which appellant contends displayed bias, and prejudiced him in the minds of the jury. The standard of review on this issue is undisputed:

The standard for determining if the trial court has acted improperly is whether the trial court's conduct is such as to prejudice the minds of the jury against defendant thereby depriving defendant of a fair and impartial trial. . . . The trial court must maintain a position of absolute impartiality, avoid any conduct which might be construed as indicating a belief on the part of the judge as to the guilt of defendant and the court should not demonstrate hostility toward the defendant. *State v. Puckett*, 611 S.W.2d 242, 244 (Mo.App., E.D. 1980).

The trial record in this case has been given thorough consideration, and a detailed discussion of appellant's complaints and the remarks to which they relate would be of no value.

The first incident appellant complains of involved the court's remarks as to why defense counsel would not agree to the state's stipulation of certain evidence. Appellant insists the court's remarks were prejudicial in that they could be construed as the judge's opinion on the importance of the evidence, defense counsel's trial method, and displayed impatience on the part of the court.

This is a strained inference. It is clear the court's remarks were an inquiry as to counsel's reasons for not agreeing to the State's stipulations and not a value judgment concerning counsel's trial method. *See State v. Brown*, 524 S.W.2d 188, 189 (Mo.App.1975). The second incident complained of involved the allegation that the court made a face when defense counsel attempted to voice an objection. We perceive this to be an opinion on the part of defense counsel not supported by any evidence in the record.

An analysis of the entire record reveals there was no apparent bias or hostility on the part of the judge and it is unlikely the jury deduced any opinions the judge might have held.

Appellant's point is without merit.

Appellant's final point concerns the allegedly prejudicial incomplete record on appeal. Appellant points out various portions which are missing from the transcript and asserts that his inability to procure a complete record denies him a full review of his claims by this court. On October 7, 1980 a hearing was held before the trial judge to settle the transcript. The parties discussed and resolved the various defects in the appeal record. The State agreed to stipulate to objections of the defense to certain evidence being admitted and all legal arguments. After a careful review of the record it appears that appellant's claims concern matters stipulated to by the State. As such appellant cannot now claim prejudice, due to the lack of a full and complete record in that the State's stipulation permitted him to raise these matters on appeal. In addition, as to the absence of the record on the pre-trial motions to suppress, it has already been established that there is no evidence appellant even attempted to obtain said record. Therefore, we conclude appellant has suffered no prejudice as a result of an incomplete record.

Point denied.

Judgment affirmed.

STEPHAN, P. J., and STEWART, J., concur.