536 F.Supp. 395 (1982)
Nevail MITCHELL, Petitioner,
v.
Donald WYRICK, Warden, Missouri State Penitentiary, Respondent.
No. 81-1631C(B).
United States District Court, E. D. Missouri, E. D.
March 26, 1982.
*396 *397 Nevail Mitchell, pro se.
John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

MEMORANDUM
REGAN, District Judge.
This action is before the Court upon the petition of Nevail Mitchell for a writ of habeas corpus under 28 U.S.C. § 2254 and the response of Donald Wyrick, Warden of the Missouri State Penitentiary.
Petitioner, a Missouri state prisoner, was convicted by a jury of murder first degree in 1977 in the Circuit Court of St. Charles County, Missouri. He was sentenced to life imprisonment. The conviction was affirmed on direct appeal. State of Missouri v. Mitchell, 622 S.W.2d 791 (Mo.App.1981).
In his petition for habeas relief Mitchell has alleged ten separate grounds for relief, which the Court has refined to seven: (1) The trial court erred because it failed to acquit the petitioner at the conclusion of the trial because the state failed to produce sufficient evidence to convict beyond a reasonable doubt. (2) The trial court erred in overruling petitioner's original and amended motions to suppress the identification evidence because it was tainted by suggestive and improper identification techniques employed by the St. Charles County Sheriff's *398 Department. (3) The trial court overruled petitioner's objection to rebuttal testimony which included certain statements made by petitioner secured in violation of his Fifth and Fourteenth Amendment rights. (4) The trial court erred in overruling petitioner's objection to the state's attempt to conduct an allegedly improper cross-examination of defense witness Ronald Schmitz. (5) The trial court erred in not providing him with appropriate relief for three separate instances involving the state's alleged failure to comply with discovery requests. (6) Petitioner was denied a fair trial because the trial judge showed hostility toward petitioner's counsel, in the jury's presence, on two occasions during the course of the trial. (7) Petitioner has been denied due process of law because the trial transcript is incomplete. These grounds are precisely the same grounds that petitioner raised in his direct appeal, and consequently, the respondent, Warden of the Missouri State Penitentiary, concedes that available state court remedies have been exhausted. 28 U.S.C. § 2254(b) and (c).
Petitioner in ground (1) alleges that the evidence was insufficient to convict him beyond a reasonable doubt of first degree murder. A federal court must consider such a claim for habeas relief by reviewing the evidence in the light most favorable to the prosecution in determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
Petitioner was convicted of murder in the shooting death of Mrs. Juanita Gregory, his life-long girlfriend. Evidence adduced by the state showed that the long-term relationship between the petitioner and the victim was punctuated by frequent arguments and physical altercations. (Resp.Exh. A-4, 454-58, 464-65.) During the course of an argument between petitioner and decedent five days prior to the murder petitioner stated to a neighbor that: "If I can't have her, no one else can." (A-4, 479-80.) A friend of the decedent telephoned her early in the morning of March 4, 1977, the day of the killing, and heard petitioner shouting in the background "You ain't got no problem, bitch," and then the telephone went dead. (Id., 407-09.) Petitioner was observed leaving the victim's home with her at approximately 8:45 or 9:00 a. m. the same morning. (Id., 396-401.) At approximately 2:00 p. m. the same day, two high school students, Duane Smith and Sue Ann Morris were seated in Smith's pickup truck near to and within sight of a barn near Weldon Springs Road in St. Charles County. (Resp.Exh. A-2, 236-40.) Smith saw a blue Cutlass Supreme exit the driveway to the barn some thirty yards behind them, and turn in their direction. (Id.) Smith testified that the car was weaving all over the road as it approached them. (Id.) Smith saw the occupant's face and Morris observed the back of his head as the car sped by them. (Resp.Exh. A-2, 239-40; Resp.Exh. A-3, 286.) Smith noted that the driver (and sole occupant) looked surprised as he passed them. (Resp.Exh. A-2, 240.) Both witnesses later identified the petitioner as the occupant of the car they observed and they also identified petitioner's automobile as being the blue Cutlass that they had observed earlier. (Resp. Exh. A-2, 239-44; Resp.Exh. A-3, 289-91.) Mrs. Gregory's body was discovered on March 5, 1977 near the aforementioned barn in rural St. Charles County, and the autopsy indicated that she died at approximately 2:00 p. m. on March 4. (Resp.Exh. A-1, 125-29; Resp.Exh. A-2, 231-33.) Shotgun shells and a shotgun seized from petitioner at the time of his arrest on March 8 matched the projectiles and weapon believed to have caused the victim's death. (Resp.Exh. A-3, 310-43.) Prints of the tires on petitioner's automobile matched a plaster cast of the tire tracks at the murder scene. (Resp.Exh. A-2, 183-85, 222-24.) Petitioner relied on an alibi defense, but his story was discredited by statements he made during a telephone call to a friend in St. Louis on the day following the murder. (Resp.Exh. A-7, 828-38.)
*399 This evidence considered in the light most favorable to the prosecution would be sufficient for a rational jury to have found the essential elements of the crime beyond a reasonable doubt. The necessary elements for first degree murder may be inferred from and established by circumstances surrounding a homicide. State of Missouri v. Davis, 400 S.W.2d 141 (Mo.), cert. denied, 385 U.S. 872, 87 S.Ct. 142, 17 L.Ed.2d 99 (1966).
Petitioner's second ground asserts that evidence of pretrial and in-court identifications should have been suppressed because the procedure employed was unnecessarily suggestive. The record before this court does not include a transcript of the suppression hearing. Nevertheless, the Missouri Court of Appeals reconstructed the pretrial identification evidence from the trial testimony. Their findings of fact were as follows:
Three days after seeing the car and the subject in question, both witnesses, Duane Smith and Sue Ann Morris were shown nine photographs of black males. Prior to the viewing, which was conducted in the presence of a high school guidance counselor and two police officers, Smith heard an officer state that the one they thought did it was in Louisiana. The officer, however, did not indicate which man it was or suggest to Smith whom he should identify. Smith then viewed the nine photographs and identified the appellant, as the man he saw driving the blue Cutlass. Morris was unable to make an identification because she had only seen the back of the subject's head. Two days later both witnesses separately viewed a six-man lineup at the St. Charles County Sheriff's Office. Smith positively identified the appellant again. Morris, after asking the lineup participants to face in the opposite direction so she could see the back of their heads, identified the appellant as the man driving the blue Cutlass. Again, there is no indication that the police suggested whom the witnesses should identify. We further conclude that there were no suggestive and improper procedures employed by the police, negating appellant's argument that there was a lack of independent basis for said identifications.
State of Missouri v. Mitchell, supra, 622 S.W.2d at 795. In addition, this Court has reviewed copies of the nine photographs used in the photo display, and a photographic reproduction of the lineup (Resp. Exh. B). This review, and the findings of the state appellate court, convince this Court that neither procedure was unnecessarily or impermissibly suggestive. Furthermore, petitioner has made no showing that the identifications were unreliable based upon the totality of the circumstances. Manson v. Braithwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).
In petitioner's third ground he alleges that his conviction is constitutionally defective because the trial court allowed Officer Bowman of the St. Charles County Sheriff's Department to testify in rebuttal regarding certain statements petitioner made following his arrest (Resp.Exh. A-7, 818-23). The statements had been excluded from the state's case-in-chief pursuant to petitioner's motion to suppress because of a violation of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). (A-1, 118-19.) Nevertheless, statements taken in violation of Miranda may still be used to impeach the defendant if he testifies on his own behalf and does so inconsistently with the prior statements. Oregon v. Hass, 420 U.S. 714, 722, 95 S.Ct. 1215, 1220, 43 L.Ed.2d 570 (1975). The statements involved in this situation were clearly admissible for the purpose of impeaching petitioner's inconsistent testimony. Ground (3) is without merit.
Ground (4) concerns the cross-examination of defense witness Ronald Schmitz, an investigator for the public defender's office in St. Charles County. Schmitz was questioned regarding statements he allegedly made to a state's witness, Phyllis Nelson, a clerk at Grandpa Pigeon's store during his investigation of the case. The statements inferred that *400 Schmitz had tried to influence Nelson to testify that petitioner had been in the store on the afternoon of the murder. (Resp. Exh. A-5, 611-15.) Petitioner's allegation that this was an "attempt to impeach Mr. Schmitz ... on a collateral matter, assuming facts not in evidence and was beyond the scope of direct examination ...", was rejected by the state appellate court because they found that the testimony "was of material significance in the case and was pertinent to the issues as developed," and also was relevant to show the interest or bias of the witness. State of Missouri v. Mitchell, supra, 622 S.W.2d at 797. Alleged errors regarding the admissibility of evidence are considered matters of state law and are not reviewable in a federal habeas proceeding, unless they infringe upon a specific constitutional guarantee or they amount to a denial of due process. Morrow v. Wyrick, 646 F.2d 1229, 1234 (8th Cir.), cert. denied, ___ U.S. ___, 102 S.Ct. 401, 70 L.Ed.2d 216 (1981). Petitioner does not allege any constitutional deprivation arising from this instance and the admission of this evidence did not amount to a denial of due process. The ground is, therefore, without merit.
Ground (5) combines three of petitioner's claims regarding alleged discovery matters: (a) Testimony from Phyllis Nelson, a rebuttal witness for the state, should have been excluded because the state had not disclosed a previous statement made by the witness upon a timely request from the defense. (b) Testimony from St. Charles County Detective Victor Bowman should have been stricken and a mistrial granted because his testimony was inconsistent with the police report provided to petitioner pursuant to his discovery motion. Petitioner alleges that his right to confront and cross-examine the witness was denied. (c) The trial testimony of Alfred L. Evans should have been excluded because his prior statement to the police had not been disclosed pursuant to a timely request from petitioner's counsel.
Petitioner called investigator Ronald Schmitz as a trial witness (Resp.Exh. A-5, 599-609). On cross-examination the prosecuting attorney questioned him regarding an aspect of his investigation not touched upon in his direct examination, i.e. his efforts to verify petitioner's story that he had been at Grandpa Pigeon's store in St. Louis County on the day of the shooting. (Id., 609-15.) In rebuttal, the state called Phyllis Nelson, a store clerk, who testified that Schmitz had talked to her on March 18, 1977 and had stated to her that "he was going to show her a picture of a man that was there [at the store] on Friday afternoon [the day of the murder] between 4:00 and 4:30." (Resp.Exh. A-7, 817.) Petitioner asserts that objections were made to this rebuttal testimony without proper disclosure of Nelson's statement, and without endorsement of Ms. Nelson as a witness. These objections are not in the trial transcript. (Resp.Exh. A-8, 12-17.)
Petitioner's reliance on State of Missouri v. Curtis, 544 S.W.2d 580 (Mo. banc 1976) is misplaced, because that case dealt with the endorsement of rebuttal witnesses when their testimony is specifically intended to rebut an announced alibi defense. Nelson's testimony was offered for the sole purpose of impeaching Ronald Schmitz' testimony. (Resp.Exh. A-7, 816.) Consequently, endorsement of the witness was not constitutionally required.
Petitioner submitted a general discovery request pursuant to Missouri Rule of Criminal Procedure 25.32 (Resp.Exh. A-1, 11-13). Disclosure of a witness's prior written statements, pursuant a general discovery request is constitutionally mandated only when the information is favorable to the accused and material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). The information testified to by Nelson was not favorable to petitioner, and consequently the state's failure to disclose it did not deprive petitioner of his due process rights. Furthermore, there was no unfair surprise because the testimony was based solely on an interview conducted by Schmitz, who was one of petitioner's witnesses. See State of Missouri v. Wagner, 587 S.W.2d 299, 302-03 (Mo.App.1979). The failure of *401 the state to endorse Phyllis Nelson and to disclose a previous statement she had given to authorities did not offend petitioner's constitutional rights.
Petitioner's second discovery claim is that the trial court erred because it did not either strike the testimony or grant a mistrial when Detective Bowman testified inconsistently with a prior statement he made in a police report which had been provided to the petitioner pursuant to a discovery request. In his original police report Bowman incorrectly stated that he had found "Western Brand" shotgun shells in his search of petitioner's home. (Resp.Exh. A-3, 352-53.) At trial he testified that he had found both "Western" and "Federal" brands. (Resp.Exh. A-3, 338.) When Bowman was examined regarding the inconsistency between the police report and his trial testimony, he insisted he had not signed the original report (the copy provided to defense counsel), but had corrected the mistake regarding the shell brands at a later date, after he had read the report. (Id., 354.) The Court granted petitioner's request to have the testimony regarding the correction stricken from the record and the Court instructed the jury to disregard it. Petitioner received all the relief requested; he did not move for a mistrial.
Petitioner's final discovery contention is that the court erred in overruling the objection to Alfred L. Evans' testimony because Evans' prior statement to police had not been disclosed pursuant to a timely discovery request. Evans testified for the state in rebuttal regarding a telephone call he received from petitioner on the day following the murder, March 5, 1977. He indicated that petitioner told him he had been at "the License Bureau" at 9:00 a. m. on March 5, 1977 and had been at "Grandpa Pigeon's" from 1:00 to 1:30 p. m. the same day. (Resp.Exh. A-7, 831-32.) This contradicted petitioner's alibi testimony regarding the times he was at the License Bureau and at Grandpa Pigeon's. Petitioner's counsel objected that these statements had not been disclosed, but the objection was overruled. (Id., 832.) On cross-examination Evans indicated that he had made several oral statements to police before they reduced his statement to writing on August 3, 1977. (Id., 837-38.) He indicated that he had mentioned the information about Grandpa Pigeon's and the License Bureau when he first spoke to police, but apparently did not mention it on the date that the written statement was taken. (Id.) Consequently, it is clear that petitioner did receive a copy of Evans' written statement pursuant to his discovery motion, but the statement did not contain all the facts which the witness eventually testified to at trial. The state did comply with the discovery rule by providing the prior written statement of Evans to the defense. The fact that Evans' trial testimony included additional information was a proper subject for impeachment, but it did not constitute a prosecutorial violation of the discovery rules. This fifth ground for habeas relief is without merit.
Ground (6) alleges judicial partiality based upon two incidents which occurred during the four-day trial: (1) The trial judge once stated "very well" in a manner which petitioner alleges indicated the court's impatience and disgust with petitioner's trial counsel. (Resp.Exh. A-6, 661-62.) (2) The judge allegedly made a face to the jury on one occasion when petitioner's counsel made an objection. (Resp.Exh. A-7, 830.) In Brinlee v. Crisp, 608 F.2d 839 (10th Cir. 1979), cert. denied, 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980), a similar claim was advanced and the court refused habeas relief stating:
It is true that a trial judge should never evince the attitude of an advocate. However to sustain an allegation of bias by the trial judge as a ground for habeas relief a petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his personal opinion and impressed the jury as more than an impartial observer.... Unless they amount to constitutional violations, prejudicial comments and conduct by a judge in a criminal trial are not proper subjects *402 for collateral attack on a conviction.... We are satisfied that no such constitutional wrongs have been demonstrated by these arguments. (Citations omitted.)
Id., at 852-53. The court in Brinlee v. Crisp conceded that the trial judge had in isolated instances during the course of petitioner's trial made statements which "arguably had some prejudicial effect on the appellant," yet relief was denied. Id., at 852. In this case the state appellate court reviewed the instant claim and concluded that there was no "apparent bias or hostility on the part of the judge and it is unlikely the jury deduced any opinions the judge might have held." State of Missouri v. Mitchell, supra, 622 S.W.2d at 799. The Court concurs with this analysis. Even assuming the truth of petitioner's version of the two incidents, they are, standing alone, insufficient to raise a due process issue of constitutional magnitude.
Ground (7) asserts that the transcript of the state trial is incomplete, thus denying petitioner a full review of his claims on appeal and consequently denying him due process.
The mere absence of a perfect transcript does not, in itself, constitute a denial of due process and the defects are not remediable by federal habeas corpus. United States ex rel. Hunter v. Follette, 307 F.Supp. 1023, 1025 (S.D.N.Y.1969), aff'd, 420 F.2d 779 (2nd Cir.), cert. denied, 397 U.S. 1067, 90 S.Ct. 1506, 25 L.Ed.2d 689 (1970); Huffman v. State of Missouri, 399 F.Supp. 1196, 1208 (W.D.Mo.1975), aff'd, 527 F.2d 899 (8th Cir.), cert. denied, 426 U.S. 924, 96 S.Ct. 2634, 49 L.Ed.2d 379 (1976). A due process issue is raised by this ground only if the defects have precluded petitioner from asserting an alleged constitutional violation in his trial. Since this ground is unsupported by facts in the instant petition, the Court has reviewed petitioner's appellate court brief on this same point. (Resp.Exh. C, 58-60.)
Petitioner previously presented a similar federal habeas claim regarding the state's original delay in producing an acceptable transcript. Mitchell v. Wyrick, 79-1300-C (3) (E.D.Mo.). That petition was dismissed pursuant to the magistrate's recommendation of February 27, 1980, for failure to exhaust available state court remedies. Subsequently, on October 7, 1980, a hearing was held in state circuit court to attempt to resolve the transcript issue. (Resp.Exh. A-8.) The state agreed to stipulate to all the objections of the petitioner, to certain evidence being admitted at trial, and to all the legal arguments used in support of such objections. (Id., 32-38.) Petitioner's counsel at the Rule 27.26 hearing agreed that the transcript issue was resolved. (Id., 35.) However, counsel again raised the issue on direct appeal and still has not signed the supplemented transcript. Apparently some question still remains. The state appellate court dismissed this issue indicating that based on the state's stipulation "appellant cannot now claim prejudice" due to the lack of full and complete record because the state's stipulation permitted him to raise these matters on appeal. State of Missouri v. Mitchell, supra, 622 S.W.2d at 799.
The Court has carefully reviewed the transcript of the stipulation hearing of October 7, 1980 (Resp.Exh. A-8), and also petitioner's appellate brief. (Resp.Exh. C.) The brief contains the reproduction of a letter from petitioner's trial counsel, Timothy Braun, to Mr. Robert St. Vrain, then Clerk of the Missouri Court of Appeals for the Eastern District of Missouri, setting out the alleged omissions as a basis for his failure to sign the transcript. (Resp.Exh. C, 61-67.) In order to assure that petitioner has suffered no prejudice in this proceeding based on the incomplete transcript, the Court presumes the correctness of each omission alleged in the letter and has reviewed the trial transcript in that light.
With regard to the absence of the suppression hearing transcript, this Court noted in connection with ground (2) that the state appeals court made findings of fact on the issue of the two witness identifications of petitioner based upon the trial testimony of these witnesses. Also, Respondent's Exhibit B, which includes a photographic *403 reproduction of the lineup and photocopies of the pictorial display shown to the witnesses, has been reviewed. In the absence of another specific allegation of prejudice suffered by petitioner because of the incomplete transcript, ground (7) is without merit. The above-described procedures have cured any prejudice resulting from the transcript omissions.
The petition of Nevail Mitchell for a writ of habeas corpus will be denied. An appropriate order will issue.