**STATE of Missouri, Respondent,**

v.

**Michael J. RELLIHAN, Appellant.**

**No. WD 34083.**

Missouri Court of Appeals,
Western District.

Nov. 15, 1983.

Thomas J. Marshall, Public Defender, Moberly, for appellant.

John Ashcroft, Atty. Gen., William K. Haas, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and CLARK and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for attempted robbery, in violation of § 564.011, RSMo 1978. The judgment is reversed and the cause remanded.

Appellant presents four points, through which he charges that the trial court erred in (1) overruling his motion for acquittal because the evidence was insufficient to sustain the jury's verdict, (2) admitting, in rebuttal, evidence which had been suppressed in the state's case in chief, because the state had failed to lay a proper foundation for the introduction of such testimony as rebuttal evidence, (3) overruling his motion to suppress physical evidence taken from the trunk of an automobile in which appellant was a passenger, and (4) overruling his motion for acquittal or to set aside the verdict, because evidence consisting of a record of a prior conviction for purposes of seeking a conviction of appellant as a prior offender was improperly admitted over objection. Appellant charges that there was no showing that the prior out-of-state conviction was a felony in Missouri, and thus sentencing by the court in lieu of jury punishment violated § 558.016.1 and § 558.016.-2, RSMo 1978.

In cases involving a reversal and remand, it is not uncommon for our courts to limit their written expression to only those points directly pertaining to the reversal. This practice is followed to accommodate the parties and to expedite the judicial process. In some cases, however, unique issues are presented which are accompanied by a strong presumption that they will be retried under circumstances identical to those of the preceding trial. The instant case falls into this category, and therefore, all of ap-

pellant's points are addressed and disposed of herein.

Under his point (1), appellant attacks the sufficiency of the evidence to sustain the verdict and alleges error by the trial court in its failure to sustain his motion for acquittal. This requires a detailed recital of the pertinent facts. Disclosure and discussion of the facts under appellant's point (1) is undertaken to provide the reader with a factual account and to permit this court to address appellant's point (1) without the necessity of subsequent factual duplication.

The record discloses the following facts:

Larry G. Foster is the owner and operator of the Apco Service Station on South U.S. 65 Highway in Sedalia, Pettis County, Missouri. At about 10:00 p.m. on January 11, 1981, Foster and three of his employees were at the station, which was closed but the inside and outside lights were on. Foster and his employees were making temporary repairs to the rear area of the station occasioned by a break-in at the station. Outside, at the front of the station, was a Pepsi vending machine which was owned by Foster. Foster came from the rear of the station and observed a Buick automobile and two men outside. One man was in front of the vending machine and the other was standing beside the Buick. Foster observed one of the men looking up and down U.S. 65 Highway and the other opening the front door of the vending machine. The man opening the machine had a bar in his hand. Foster, along with one of his employees, David Arnold, went through the front door of the station and toward the two men. Arnold got close to the machine and one of the two men. The other man put up his hands and a scuffle between all three occurred. Arnold and Foster later testified that appellant struck Arnold on the head with the bar. Arnold got loose, and as he and Foster returned inside the station, the two men drove from the station and south on U.S. 65 Highway. Another employee, Gary Cornine, also testified that he observed the Buick enter the station area, and that he recognized appellant as the man near the machine. There was no evidence that any money was taken from the machine.

Local police were notified and a patrol vehicle proceeded south on U.S. 65 Highway. The Missouri Highway Patrol was alerted and dispatched two patrol vehicles north on U.S. 65 Highway to intercept the Buick. The Buick, which was occupied by appellant and one Gilbert Vanderpool, stopped at a Casey's General Store some 25 miles south of Sedalia, Missouri. Vanderpool was driving the Buick and appellant was a front-seat passenger. Registration on the Buick established that it was owned by Vanderpool's wife. Appellant and Vanderpool were arrested. The troopers looked into the trunk of the Buick. Entry to the trunk was made by using a key that was found on the ground to the rear of Buick as it was stopped next to a gasoline pump at the Casey's store. The troopers observed in the trunk a plastic wastebasket half full of silver coins, vise grip type pliers, a dent puller, bolt cutters, and a small overnight case.

Vanderpool testified for the defense. He stated that he was the one who attempted to open the machine owned by Foster, and that appellant was not involved. Vanderpool also testified that he is the one who "swung" at the employee with the "bar", but he denied striking the employee. Vanderpool further testified that he had not previously discussed breaking into the machine with appellant, that appellant did not participate, and that appellant did not become involved in the altercation with the employee. Vanderpool testified that he pleaded guilty to the charge of attempted robbery, second degree, arising from the events set forth herein.

Appellant testified on his own behalf. He stated that he and Vanderpool were en route to Warsaw, Missouri to see a couple of "ladies" that he knew. Appellant stated that he had fallen asleep in Vanderpool's vehicle (the Buick) while en route to Sedalia from Kansas City, and that when he awoke, they were at the Apco Station. He stated that he observed Vanderpool at the vending machine. Appellant got out of the Buick,

started to walk toward the machine, and observed Vanderpool pick up a "bar" from the ground and begin to "jimmy" the vending machine. Appellant testified that two or three people then came from the station, and that Arnold began hitting and kicking them. Appellant further testified that Vanderpool swung at Arnold with the "bar," but did not strike Arnold. Appellant stated that he became afraid and jumped in the Buick.

In rebuttal, the state then called Steve Keeney, an employee of the Missouri Division of Probation and Parole. Over objection, Keeney testified that he had a phone conversation with appellant, during which appellant said the charge of robbery was ridiculous and that he was only guilty of getting into the machine.

In surrebuttal, appellant testified that he had never talked with anyone from the Division of Probation and Parole. The evidence then closed. The jury returned its verdict of guilty, but assessed no punishment, because the trial court previously had determined that appellant was a *prior offender* within the meaning of § 558.016, § 558.018, and § 558.021, RSMo 1978. This determination was based upon the state's proof of appellant's conviction in Oklahoma for the offense of "burglary of a vending machine" which is a felony offense under Oklahoma law. The court assessed a sentence of three years. This appeal followed the overruling of timely-filed after-trial motions.

■ As noted above, appellant's point (1) challenges the sufficiency of the evidence to sustain the jury's verdict of guilty to the charge of attempted robbery, second degree. Appellant was charged by amended information of having violated § 564.011. The information also charged appellant as a prior offender pursuant to § 558.016.1 and sought punishment, upon conviction, pursuant to § 558.011.1(3) and § 560.011, RSMo 1978.

Appellant argues that at best the evidence reveals only an intent to steal money from a vending machine while no other person was around. Appellant further as-

serts that the encounter with the employee, Arnold, was for the purpose of escape. Appellant points out that the evidence does not reveal further attempts to steal after the encounter with Arnold. From this, appellant concludes that the evidence failed to establish the requisite intent to rob as required by the statute.

The statutes applicable to this issue are § 569.030, § 569.010, and § 564.011, RSMo 1978. Those sections read as follows:

"569.030. Robbery in the second degree

1. A person commits the crime of robbery in the second degree when he *forcibly steals* property.

2. Robbery in the second degree is a class B felony." (emphasis added)

"569.010. Chapter definitions

As used in this chapter the following terms mean:

(1) 'Forcibly steals', a person 'forcibly steals', and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of:

(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft; . . ."

"564.011. Attempt

1. A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. . . .

3. Unless otherwise provided, an attempt to commit an offense is a: . . .

(2) Class C felony if the offense attempted is a class B felony."

As noted from the above factual recital, Foster and Arnold observed appellant attempting to force the door off the vending machine. Both Arnold and Foster testified that Arnold attempted to prevent appellant and Vanderpool from proceeding further. Foster and Arnold both testified that appellant struck Arnold with a "bar". It is obvious from the evidence that the attack on Arnold was for the purpose of overcoming resistance to the attempt to steal by appellant and Vanderpool. The attack upon Arnold was simultaneous and a part of the attempted stealing. The evidence reveals (under the testimony of Arnold and Foster) that appellant actually struck Arnold on the head with the "bar." This constitutes the use of physical force upon the person of another (§ 569.030.1 and § 569.010) while attempting to "forcibly steal" the property of another. (§ 569.030, § 569.010, and § 564.011)

The record reveals that the evidence was sufficient to withstand appellant's motion for acquittal. The instant case is analogous to the case of *State v. Harris*, 622 S.W.2d 742, 745 (Mo.App.1981), wherein this court ruled that the defendant's participation in "shoving" a security guard outside a department store following the theft of clothing and during the course of escape, justified a finding by the jury that the defendant personally participated in the use of force to escape with the stolen clothing. In *Harris*, this court ruled that the force was sufficient for second-degree robbery. That precise rule applies herein upon the evidence revealing that appellant struck Arnold on the head with the "bar".

The trial court did not err in denying appellant's motion for acquittal. The evidence was sufficient to withstand appellant's motion and to support the jury's verdict.

There is no merit to appellant's point (1) and it is ruled against him.

Under his point (2), appellant charges that the trial court erred when it admitted the testimony of witness Steve Keeney. That testimony included an oral statement by appellant that he was guilty of breaking into the vending machine and that the charge of robbery was ridiculous. Appellant charges that the court erred because (a) the oral statement of appellant had been suppressed as part of the state's case in chief and (b) it was error to permit such evidence in rebuttal because the state failed to lay a proper foundation for its admission during its case in chief.

The record reveals that appellant presented a pre-trial motion to suppress a pre-sentence investigation report which included a conversation between appellant and the parole officer, Steve Keeney, during which appellant made the above-referred-to admission of his guilt of "getting into the machine." [1]

The trial court sustained appellant's motion to suppress in the state's case in chief, apparently upon the basis of the prosecution's statement, "Your Honor, I don't have any objection that you make a ruling, I think that is the law to suppress it as the case in chief." The record reveals that appellant had attacked the statement upon Keeney's failure to have provided appellant his proper *Miranda* warning. Without providing the full citation of authority, appellant convinced the trial court of his position. The record reveals a reference by appellant to *State v. Williams*. This court presumes that appellant was attempting to reference *State v. Williams*, 486 S.W.2d 468 (Mo.1972), which rules that probation and parole officers must provide *Miranda* warnings.

The record reveals that the rule in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not complied with. It is obvious from the prosecutor's statement above that he was convinced of appellant's contention. The trial court then

1. It must be noted that this appeal follows the second trial of appellant on this charge. In the first trial, the jury convicted appellant. Appellant filed a motion for new trial during the pendency of which a pre-sentence investigation was conducted which culminated in the above-referred-to report. The first trial resulted in a new trial when subsequently the trial court granted appellant's motion for a new trial.

ruled: "motion to suppress portion of pre-sentence investigation report pertaining to statements of defendant contained in pre-sentence investigation report presented, considered, and sustained."

Keeney did not testify for the state in its case in chief. Appellant was *never* asked, either during direct examination or upon cross-examination, anything about the alleged statement to Keeney which the latter included in his written pre-sentence report. What occurred was that the state simply put Keeney on the stand, and over objection, he was permitted to testify as to appellant's statement.

Appellant refers this court to *State v. Sager,* 600 S.W.2d 541 (Mo.App.1980), cert. denied, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981), where at 556, this precise issue is discussed in length. This court is also referred to *State v. Mitchell,* 622 S.W.2d 791 (Mo.App.1981), where at 796, citing to *Sager,* the court again discussed the issue.

■ Without referring to the specifics in either *Sager* or *Mitchell,* this issue and the applicable rules can be summarized and noted as follows. When evidence, such as incriminating statements, are suppressed by the trial court because of the violation of the rule prescribed in *Miranda,* the use of such statements is prohibited in the prosecution's case in chief. The use of such statements was entirely prohibited until the ruling by the United States Supreme Court in *Oregon v. Hass,* 420 U.S. 714, 722, 95 S.Ct. 1215, 1221, 43 L.Ed.2d 570 (1975), which declared, "[T]he shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances." The foregoing rule had found pronouncement in the case of *Harris v. New York,* 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1 (1971). *Harris* and *Sager* ruled that statements suppressed in the prosecution's case in chief could be used in rebuttal provided that two criteria were met prior to their use in rebuttal. The first of these criteria is the showing that the statements were volun-

tary. The second is the showing that a proper foundation was laid. *Mitchell, supra.*

In the instant case, neither of the foregoing two criteria was met. While testifying, appellant was never asked about any statement allegedly made to witness Keeney. Keeney was merely called in rebuttal, and over objection, testified that appellant made the statement to him. This was not in compliance with the rule in *Hass, Harris, Sager,* and *Mitchell, supra.* The trial court erred in admitting the Keeney testimony relative to appellant's alleged statement.

On this appeal, respondent contends that since appellant again took the stand in sur-rebuttal and denied making the statement, that the rules in *Hass, Harris, Sager,* and *Mitchell* were no longer applicable, because appellant had somehow waived the right to have those rules apply, i.e., the "slate had been wiped clean." Respondent refers this court to *State v. Hurley,* 602 S.W.2d 838 (Mo.App.1980), *State v. Grey,* 525 S.W.2d 367 (Mo.App.1975), and *Sager, supra.*

Respondent's reliance upon *Hurley* is misplaced. *Hurley* relied upon the case of *State v. Teegarden,* 559 S.W.2d 618, 621 (Mo.App.1977), and addressed the challenge of the accused that he was prejudiced by the admission of a police report which included two mug shots (although the photos were never displayed to the jury) even though the accused had testified and admitted to previous convictions for armed robbery. *Hurley* does not even approach the present case.

*Grey* is also misplaced by respondent. In *Grey,* the issue was identification. The accused took the stand, and by his own testimony, removed the issue of identification. The court in *Grey* ruled that the accused; by testifying, could not later charge the trial court with error relative to identification evidence, because there was no timely objection to identification testimony in the prosecution's case, and because of the additional fact that the accused had removed the issue of identification.

Respondent's reliance upon *Sager* is also misplaced, because *Sager* does not rule that the two criteria mandated by *Hass, Harris, Sager,* and *Mitchell* are waived, or thus inapplicable, because the appellant offered surrebuttal testimony. Contrary to respondent's contention, *Sager* in fact refutes the respondent's position.

The Keeney testimony would be admissible in the instant case upon retrial by way of rebuttal once the rules prescribed by *Hass, Harris, Sager,* and *Mitchell* are met. The present record reveals that the rules prescribed by those authorities were not met. Upon that failure, the trial court erred in admitting Keeney's testimony in rebuttal. Appellant's surrebuttal evidence did not cure or correct the error.

Appellant's point (2) is sustained to his favor.

Under his point (3), appellant charges that the trial court erred in overruling his motion to suppress physical evidence taken from the trunk of the Buick automobile.

As noted from the above recitation of the facts, certain items, to wit, a plastic wastebasket half full of silver coins, a pair of vise grip pliers, a dent puller, a pair of bolt cutters, and a small overnight-type suitcase, were taken from the Buick automobile after the vehicle's removal from the arrest scene. Over objection, these items were introduced into evidence.

Appellant's motion to suppress, his objection at trial, and his position on this appeal is that the physical evidence was not admissible, because the items were not seized pursuant to a search warrant. Therefore, such evidence was incompetent and the testimony concerning this evidence was not relevant, because none of the items was ever shown to have been in appellant's possession or shown to have been used in the commission of the offense with which appellant was charged.

■ Appellant's first contention regarding the lack of a search warrant fails because appellant lacked any standing to challenge the search of the Buick. The automobile bore a registration in the name of Vanderpool's wife. By his testimony, Vanderpool confirmed that the Buick belonged to his lawful wife and that he was the operator thereof. The evidence merely reveals that appellant was a passenger in the Buick, and a passenger normally has no expectation of privacy in the trunk of someone else's automobile. *State v. Wood,* 613 S.W.2d 898, 900 (Mo.App.1981). There is nothing upon this record to show that appellant had any property or possessory right or interest in the Buick or in the above-referred-to physical property seized. Indeed, appellant does not even assert any such interest in either the property or the automobile.

■ Appellant's second challenge to the above-referred-to evidence on the basis that such evidence was not relevant must also fail. The challenge made by appellant was clearly ruled against him in the case of *State v. Marler,* 453 S.W.2d 953, 956 (Mo. 1970). *See also State v. Heitman,* 473 S.W.2d 722, 727 (Mo.1971), and *State v. Mayo,* 593 S.W.2d 644, 645 (Mo.App.1980). In *Marler,* the court noted that items such as a crowbar, lug wrench, and large screwdriver are generally known to be tools used by burglars. The court, at 956, went on to point out, quoting from *State v. Miller,* 368 S.W.2d 353, 360 (Mo.1963):

"Where the evidence shows that accused was in the vicinity of the scene of the burglary ... about the time of its commission, evidence that he was in possession of or had access to burglarious tools with which the crime was or might have been committed is competent, if under the particular facts of the case the tools ... are sufficiently connected with accused and the crime to become relevant and have some probative value and if they bear upon the question of intent."

In the instant case, it can be likewise be said that items such as vise grip pliers, a dent puller, and bolt cutters are certainly the generally known tools of a burglar. *Marler, supra.* In addition, the evidence upon this record shows that appellant was in the vicinity of the offense at the time of its occurrence. In addition, it cannot be

said that appellant did not have access to the particular items. They were in the trunk of an automobile in which he was a passenger. *Miller, supra.*

The physical evidence was admissible upon another basis as well, in that while unto itself this particular evidence is evidence of another criminal act, it was nonetheless admissible herein to establish motive, intent, a common scheme or plan, the identity of appellant, or the absence of mistake or accident with respect to the charge against appellant. *State v. Moss,* 627 S.W.2d 667, 668 (Mo.App.1982).

The trial court did not err in overruling appellant's motion to suppress the physical evidence secured from the automobile trunk, or in overruling appellant's trial objections to its introduction and testimony introduced relative to it.

There is no merit to appellant's point (3) and it is ruled against him.

Under his final point (4), appellant charges that the trial court erred in declaring him to be a prior offender pursuant to § 558.016.1 and § 558.016.2, RSMo 1978 (as amended 1980 and 1981), and thus imposing sentence in lieu of permitting the jury to assess his punishment. Appellant asserts that there was no evidence showing that his previous conviction for burglary of a vending machine in Oklahoma (a felony offense in Oklahoma) constituted a felony under the laws of Missouri.

Research has failed to reveal any decision by our courts interpreting § 558.016 as amended by the Missouri General Assembly in 1981. Section 558.016 was amended by the General Assembly in 1981 through passage of S.C.S.H.C.S.H.B.–554. By the passage of that legislation, § 558.016 was amended to include an additional provision which presently reads, "2. A *'prior offender' is one who has pleaded guilty to or has been found guilty of one felony."*

Two questions arise as a result of the passage of the above provision regarding the legislative intent of that provision. The first question is: Did the General Assembly intend the term "one felony" to mean one felony having been committed, and a conviction resulting therefrom, only within Missouri? The second question to arise is: If "one felony" is not limited to a felony within the state of Missouri, then does the term "one felony" mean a felony within the meaning of the law of other states and federal jurisdictions, and does it also mean that an offense, though a felony in a foreign jurisdiction, must, for purposes of the statute, be shown also to be a felony under the law of Missouri?

The latter question essentially reflects the position and argument of appellant herein. He further argues, of course, that there is no showing that the "Oklahoma offense" is a felony under Missouri law.

In 1978, the Missouri General Assembly passed S.B.–60, (effective January 1, 1979) known as the Missouri Criminal Code. By passage of that legislation, numerous changes in Missouri's criminal laws occurred. As it concerns the instant case, it must be observed that S.B.–60 repealed, without reenactment, § 556.280 and § 556.-290, RSMo 1969. Those previous sections read as follows:

"556.280. Second offense, how punished

If any person convicted of any offense punishable by imprisonment in the penitentiary, or of any attempt to commit an offense which, if perpetrated, would be punishable by imprisonment in the penitentiary, shall be discharged, either upon pardon or upon compliance with the sentence, and shall subsequently be convicted of any offense committed after such pardon or discharge, he shall be punished as follows:

(1) If such subsequent offense be such that, upon a first conviction, the offender would be punishable by imprisonment in the penitentiary for life, or for a term which under the provisions of this law might extend to imprisonment for life, then such person shall be punished by imprisonment in the penitentiary for life;

(2) If such subsequent offense be such that, upon a first conviction, the offender would be punished by imprisonment for a limited term of years, then such person

shall be punished by imprisonment in the penitentiary for the longest term prescribed upon a conviction for such first offense;

(3) If such subsequent conviction be for an attempt to commit an offense which, if perpetrated, would be punishable by imprisonment in the penitentiary, the person convicted of such subsequent offense shall be punished by imprisonment in the penitentiary for a term not exceeding five years."

"556.290. Conviction in another state, effect of

Every person who shall have been convicted in any of the United States, or in any district or territory thereof, or in a foreign country, of an offense which, if committed in this state, would be punishable by the laws of this state by imprisonment in the penitentiary, shall, upon conviction for any subsequent offense, within this state, be subject to the punishment herein prescribed upon subsequent convictions, in the same manner and to the same extent as if such first conviction had taken place in a court in this state."

The foregoing sections were replaced by § 558.016. (See Disposition Table—S.B.–60.) In its initial form, § 558.016 contained no provision for a "prior felony", but rather, § 558.016 addressed the "persistent offender" and the "dangerous offender" problem. In 1981, § 558.016 was again amended to include § 558.016.2 quoted above. The 1981 amendment did not reenact any language of the former § 556.290.

As noted, within the former § 556.290 the General Assembly expressly required that a criminal offense in another jurisdiction was required also to be a felony under Missouri law before the statute was applicable. Our courts gave the same interpretation to this section during its period of applicability. This requirement is not found either within the original § 558.016 or the amendment of 1981.

It also should be noted that in 1981 § 558.018 and § 558.021 were amended, and provide for extended punishment by the court upon a showing that the accused is a "prior," "persistent," or "dangerous" offender. The instant case does not involve the issue of extended punishment, but instead, it involves the question of whether the trial court, instead of a jury, can assess punishment pursuant to § 558.016.

In determining legislative intent, our courts have adopted certain general guidelines. It is first mentioned that the instant case does not involve the principle of harmonizing or reconciling two or more statutes which appear to be repugnant. The instant case does not involve the question of an existing general statute subject to modification by a subsequently enacted special statute. For an analysis of those two statutory problems, see *Dover v. Stanley*, 652 S.W.2d 258 (Mo.App.1983), and cases cited therein.

By passage of S.B.–60, the Missouri General Assembly simply and unequivocally repealed the former § 556.290. Neither the original § 558.016 nor the revised version (1981) contain any limitation as previously contained in § 556.290. The current wording of § 558.016.2 specifically and exclusively employs the term felony.

There is no need for this court to provide any dissertation of the term felony. It is a term long recognized in the annals of Anglo Saxon Law, and the following definition from *Black's Law Dictionary* suffices:

"**FELONY**. A crime of a graver or more atrocious nature than those designated as misdemeanors. *Ex parte Ramirez*, 49 Cal.App.2d 709, 122 P.2d 361, 362. Generally an offense punishable by death or imprisonment in penitentiary." *Black's Law Dictionary* 744 (4th ed. 1951)

■ The foregoing section (§ 558.016.2), by its very wording, sets forth no requirement that the term felony is restricted or limited to felonies committed in Missouri. To state it another way, it is clear to this court that the Missouri General Assembly intended the term felony to define and thus include, felony offenses from other jurisdictions—federal and sister states. Thus, the answer to the first question above is no. The General Assembly, had it intended oth-

erwise, could have included limiting language, such as "has been found guilty of one felony *in this state*," or words of similar limitation. No such language having been included by the General Assembly, it is quite clear that the General Assembly intended the term felony to be a term of inclusion which permits the trial court to impose sentencing, instead of the jury, for a prior felony offense committed within, and subject to, federal and sister state jurisdictions.

Question number two above creates a bit more discussion simply because of the historical application of former § 556.290. Indeed, appellant herein argues that the present section § 558.016.2 should be given an interpretation previously required by former § 556.290 and by court decisions pursuant to § 556.290. Stated another way, appellant argues that before § 558.-016.2 is applicable, it must first be shown that a previous conviction, from a sister state or within federal jurisdiction, is also a felony under Missouri law. Such was the requirement, both by the wording of the statute and by judicial application, of former § 556.290.

Inquiry of the General Assembly has revealed no legislative record, notes, or other data within the archives of the General Assembly which indicates that the General Assembly intended to retain any of the provisions of former § 556.290.

What is clear from this court's research of the Missouri Criminal Code, and specifically § 558.016 inclusive of § 558.016.2, is that the General Assembly has intended our courts to be *more* and not *less* involved in the sentencing process.

If one looks to the specific wording of § 558.016.2, it is clear that the term "felony" is used in its broadest sense. There are no other words which limit the term "felony" to a felony within the meaning of Missouri law. There are no other words which mandate that the trial judge should first determine that a felony from another jurisdiction be equal or tantamount to a felony under Missouri law. Such was the case with former § 556.290, but was clearly re-

pealed by the enactment of S.B.–60 and the 1981 amendment to § 558.016.

Appellant's contention that the intent and interpretation of § 558.016.2 should rest upon the language and interpretation of former § 556.290 assumes incorrectly that our trial courts will impose a longer sentence than otherwise imposed by a jury. There is no way such a forecast could be made, as assumed by appellant.

Following appellant's argument further brings to mind the whole issue of comity, and full faith and credit, both legislatively and judicially, and other ramifications inherent within the area of conflicts of law as between varying jurisdictions. As a result of the clear, direct expression within § 558.-016.2, none of these issues are presented. They are mentioned solely to illustrate how they weigh against appellant's claim herein.

Section 558.016.2 is clear and unambiguous in its terms, including the use of the word felony. Our courts are guided by what the General Assembly declares and not by what the courts might think the General Assembly meant to say. *State ex rel. Igoe v. Bradford,* 611 S.W.2d 343, 349 (Mo.App.1980). Our courts cannot read into a statute words not found within the statute when the language of the statute is clear. *Jackson v. Wilson,* 581 S.W.2d 39, 44 (Mo.App.1979). Words within a statute are to be given their plain and ordinary meaning. *Springfield Park Central Hospital v. Director of Revenue,* 643 S.W.2d 599, 600 (Mo.1983). When statutes are amended, the amendment is normally intended to have some effect and the General Assembly is not charged with doing a useless act. *Press-Journal Publishing Co. v. St. Peters Courier-Post,* 607 S.W.2d 453, 457 (Mo.App. 1980). Where the language of a statute is clear, our courts may not determine that the General Assembly, by its enactment of that statute, encompassed a more restricted meaning for the statute. *United States v. Kelly,* 519 F.2d 251 (8th Cir.1975). Statutory expression of one thing implies the exclusion of another. *Harrison v. MFA Mutual Insurance Co.,* 607 S.W.2d 137, 146 (Mo. banc 1980). Where there is only one statu-

**546**

tory meaning, there is no room for statutory construction. *State Tax Commission v. Administrative Hearing Commission,* 641 S.W.2d 69, 76 (Mo. banc 1982).

■ This court finds that the term felony, as used within § 558.016.2, was intended by the General Assembly to mean the type of criminal offense as distinguished from a misdemeanor or infraction, and to intend the broadest expression of that form of criminal activity. In addition, it is the further finding of this court that the definition of the term felony within § 558.016.2 is not limited by, nor does it require, a finding that the previous conviction under another jurisdiction, either federal or state, is also a felony under Missouri law. Had the General Assembly intended such a limitation or requirement, it would or could have employed terms of limitation found within the now repealed § 556.290. By such finding herein, our trial courts are empowered at their election to impose sentencing in place of the jury upon a finding that the accused stands convicted of a previous felony from any other jurisdiction (i.e., federal or sister state), *without* any additional proof or showing that the prior felony conviction is also a felony under Missouri law. It follows that the answer to question number two above is also no.

■ There is no merit to appellant's point (4) and it is ruled against him.

It is noted above that this case must be reversed and the cause remanded, because of the failure of the respondent to lay a proper foundation for the introduction of the Keeney testimony in violation of the rules announced in *Hass, Harris, Sager,* and *Mitchell, supra.* [i.e., appellant's point (2) above, sustained in appellant's favor]

The remainder of appellant's points are ruled against him. Discussion of those remaining points was undertaken herein because of the uniqueness and importance of the points raised, and to provide guidelines for the trial court upon a retrial, if any, of this case.

Reversed and remanded.

All concur.